THE MANSFIELD MACHINE WORKS v. THE COMMON COUN-
CIL OF THE VILLAGE OF LOWELL.

*Steam fire-engine—Sale of to a village—On contract providing for acceptance by village after trial of engine—If, after such trial, machine is rejected and vendor notified—Recovery cannot be had on contract—Contract partly written and partly printed—If inconsistent, written portion must control.*

Plaintiff contracted with the village of Lowell for the sale of a steam fire-engine and attachments. The contract was *mostly* printed, but before its execution the attorney for the village inserted in *writing* the following stipulation:

"" The price of said engine to be fifteen hundred dollars. and to sell three hundred feet of 2½-inch 4-ply rubber hose for $40, and proper couplings, *all* to be delivered on cars at Mansfield, Ohio; $540, cash, payable when engine and hose are *accepted*, balance in equal payments,—first, on or before six months; second, on or before eighteen months,—with interest at six per cent. from date of *acceptance.* First party guarantees freight from place of shipment to Lowell not to exceed $60. Said hose is hereby warranted, with ordinary care and usage, to keep in good and perfect repair four years, by first party, from date of acceptance."

The engine;was promptly shipped, the defendant paying the freight, and placing it in its engine-house, and notifying plaintiff of its arrival, and to send a man to start it. The man was sent, and after two trials the engine was rejected by the village, and plaintiff notified. After this a *third* trial was had by request of the agent, at his own expense, and at a subsequent meeting of the council a motion to rescind the order of rejection was lost, and the recorder was directed to notify plaintiff to remove the engine, which notice was mailed the next day. This the plaintiff failed to do, and brought suit on the contract, averring *performance* on its part and the *acceptance* by defendant of the engine.

*Held,* that under a fair construction of the contract the village was not to *pay* for the engine until it saw fit to *accept* it after a *trial* of the machine, and that the delivery on the cars at Mansfield had nothing to do with such *acceptance* or *payment.*

*Held,* further, that the *written* portion of the contract, if inconsistent with any part of the *printed* form, must govern and control.

Error to Kent. (Montgomery, J.) Argued July 15, 1886. Decided July 21, 1886.

Assumpsit. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*J. C. FitzGerald* (*Allen C. Adsit*, of counsel), for appellant:

Plantiff had a right to have the case submitted to the jury on the theory on which the parties had tried it, and it was for them to determine whether or not the goods delivered were of the *kind* and *quality* called for by the contract.

The instruction of the court was erroneous, because it gave the defendant power to *indefinitely* postpone the time of payment by *arbitrarily* refusing to accept the engine, notwithstanding it may have conformed to all the requirements of the contract. This the defendant could not lawfully do ; if the plaintiff proved a *delivery* at the place agreed upon, and that there remained nothing further for it to do, it need not show an *acceptance* by the defendant : *Nichols v. Morse*, 100 Mass. 523; *Rodman v. Guilford*, 112 Id. 405 ; *Caulkins v. Hellman*, 47 N. Y. 452 ; *Krulder v. Ellison*, Id. 36 ; *Ganson v. Madigan*, 13 Wis. 72 ; *Chapman v. Ingram*, 30 Id. 294; *Mee v. McNider*, 39 Hun, 345 ; Benj. on Sales (3d ed.), § 699.

If there was a *full* performance on plaintiff's part, nothing more could be required, and the time for payment had arrived : *City of Brooklyn v. Brooklyn City R. R. Co.*, 47 N. Y. 475 ; *Miesell v. Ins. Co.*, 76 Id. 115 ; *Folliard v. Wallace*, 2 Johns. 395 ; *Daggett v. Johnson*, 49 Vt. 345.

" Upon a valid sale of specific chattels, when nothing remains to be done by the vendor except delivery, whether conditioned upon payment or not, the right of property passes to the vendee, at whose risk it is retained by the vendor, and the same consequence as to title results from a valid *tender* upon an executory contract.

" Upon the refusal of the vendee to accept and pay the price, the vendor, upon proper notice, may sell the property and recover the difference ; or he may sue for the difference between the contract and actual price, in which case he elects to retain the property as his own; or he may recover the contract price, in which case he holds the property as trustee for the vendee, and is bound to deliver it, whenever demanded, upon receiving payment of the price.

" In selling the property after tender and refusal, the vendor acts as the agent and trustee of the vendee, to whom the title is deemed to have passed by the tender. The right of

the vendor to recover the price of the goods, if he chooses to risk the solvency of the vendee, necessarily results : " *Dustan v. McAndrew*, 44 N. Y. 72 ; *Hayden v. Demets*, 53 Id. 426 ; *Mason v. Decker*, 72 Id. 599 ; *McCormack v. Gilliland*, 76 Mo. 655 ; *Strong v. Dodds*, 47 Vt. 348–358 ; *Holland v. Rea*, 48 Mich. 223 ; Sedgwick on Damages (marg. pag.), 280 ; 3 Parsons on Contracts (6th ed.), 208 (star pag.), 225 (marg.) ; *Cook v. Brandeis*, 3 Metc. (Ky.) 555 ; *Bell v. Offutt*, 10 Bush (Ky.), 639 ; *Bagley v. Findlay*, 82 Ill. 524 ; *Young v. Mertens*, 27 Md. 126 ; *Barr v. Logan*, 5 Harrington (Del.), 54.

The delivery according to the written agreement of the parties was, *ipso facto*, an acceptance of the property. Nothing remained for the plaintiff to do, and if the engine, hose, and couplings were of the kind and quality purchased in all respects, the defendant could not avoid its liability to pay as agreed : *Glen v. Whitaker*, 51 Barb. 451 ; *Strong v. Dodds*, 47 Vt. 348–358 ; *Krulder v. Ellison*, 47 N. Y. 36 ; *Pacific Iron Works v. Long Island R. R. Co.*, 62 Id. 272 ; *Gordon v. Ward*, 16 Mich. 362 ; *Hunter v. Wright*, 12 Allen, 550.

Where the contract is in writing, it is simply a question whether the plaintiff has performed his contract, and whether the defendant *ought* to accept the goods : *Stone v. Browning*, 68 N. Y. 600.

Where a right of inspection and trial exists in a contract, as in this case, the vendee is supposed to undertake to act fairly, and to found his determination on just and sensible grounds, and from thence a necessary implication arises that the correctness and adequacy of the grounds of his decision are subject to the judgment of judicial triers : *Clark v. Rice*, 46 Mich. 308; *Wood, etc., Machine Co. v. Smith*, 50 Id. 565 ; *Hartford Sorghum Mfg. Co. v. Brush*, 43 Vt. 528.

If defendant, under the contract, had a right to reject the goods if not satisfactory, it could not avoid it by rejecting the engine and retaining the hose, and by retaining the latter the contract remained in force as to the whole : *Jewett v. Petit*, 4 Mich. 511–14 ; *Draper v. Fletcher*, 26 Id. 156 ; *Hubbardston Lumber Co. v. Bates*, 31 Id. 158–169 ; *Morse v. Brackett*, 98 Mass. 205 ; *Clark v. Baker*, 5 Metc. 452–7 ; *Miner v. Bradley*, 22 Pick. 457 ; 2 Parsons on Contracts, 519 (star notes *d* and *e*) ; *Wolf v. Dietzsch*, 75 Ill. 205.

The reservation of the title to the property until paid for did not affect plaintiff's right to enforce the contract liability for the purchase money : *Hayden v. Demets*, 53 N. Y. 431; *Higgins v. Murray*, 73 Id. 252 ; S. C. 4 Hun, 565.

*John M. Mathewson* (*Blair, Kingsley & Kleinhans*, of counsel), for defendant:

As to implication from the surroundings of the parties, and contract that machine should be new, etc., see *Grieb v. Cole*, 60 Mich. 397.

There is a clear distinction between a delivery and an acceptance, and there can be no acceptance without an opportunity of rejection: Benj. on Sales (3d ed.), § 155 (notes *m* and *o*). And, see *Cole v. Village of Homer*, 53 Mich. 438; *Philadelphia Whiting Co. v. Detroit White Lead Works*, 58 Id. 29.

There is a class of cases for goods sold and delivered, where, if plaintiff proves a delivery at the place agreed upon, and that nothing further remains for him to do, an acceptance need not be shown by the defendant: *Nichols v. Morse*, 100 Mass. 523.

But these authorities do not apply here, as under the contract there was to be a *complete* delivery to the village, *after* which a preliminary test or trial was to be had prior to any *acceptance* by the village.

MORSE, J. The plaintiff and defendant entered into a written contract, on the twenty-sixth day of December, 1884, for the sale by the former and purchase by the latter of a steam fire-engine and attachments.

The first portion of the contract consists of a minute description of the engine and its machinery, not necessary to be set out for any purpose involved in the decision of the case. The latter part of the contract is as follows:

"The price of said engine to be fifteen hundred dollars, and to sell three hundred feet of 2½-inch 4-ply rubber hose for $40, and proper couplings, all to be delivered on cars at Mansfield, Ohio; $540 cash, payable when the engine and hose are accepted, balance in equal payments,— first, on or before six months; second, on or before eighteen months,— with interest at six per cent. from date of acceptance. First party guarantees freight from place of shipment to Lowell not to exceed $60. Said hose is hereby warranted, with ordinary care and usage, to keep in good and perfect repair four years, by first party, from date of acceptance.

"The date of delivery, as named above, is subject to possible delay from accident or other cause unavoidable, delaying manufacture or shipment.

"The party of the second part bind themselves, or their legal representatives, to take the above-described engine and

attachments, and to pay the money on or before the time and in such manner as above specified.

"In case of any defects in the material or workmanship of said machinery, said first party are to make the same good without charge, and of any such defects notice must be given within *ten* years from the date of the delivery of said engine; otherwise all claims whatever are expressly waived by said second party. It is also understood that no warranty, or verbal understanding or agreement of any kind, exists in relation to this contract other than what is herein expressly stated.

"And it is further agreed that the title of ownership and right of possession of said engine and boiler shall remain in and with the party of the first part until all payments of principal and interest are fully paid."

The contract was *printed*, except *dates* and *names* of *parties*, and the *first* paragraph above. *This* paragraph was *written* in said contract by John M. Mathewson, the village attorney. The word "*ten*" before "years," in the next to the last paragraph, was also written by him, the word "*two*" in the *printed* contract being stricken out.

January 13, 1885, the engine was shipped by plaintiff, at Mansfield, Ohio, by a route selected by defendant. January 17 the engine arrived at Lowell. The defendant paid the freight thereon, and put the same in its engine-house, and notified plaintiff of its arrival, and requested it to send a man to start it. January 26 Mr. Coon, an agent of plaintiff, arrived at Lowell, and an inspection and trial of the engine was had on that day, and also on the twenty-eighth of the same month.

On this last day of the trials the common council of the village passed a resolution rejecting the engine under the contract as not proving satisfactory, of which action the village recorder notified the plaintiff on February 9.

Mr. Coon was present at the meeting when this resolution was passed, and there requested the privilege of leaving the engine in the village engine-house, and also the privilege of another trial of the engine, at his own expense, within 10 days which, upon motion, was granted by the village council.

On the fourth day of February another trial was had, and on the next day a meeting of the common council was held,

at the request of Mr. Coon, to talk over the matter of the engine with them.

At this meeting, after hearing Mr. Coon, as shown by the record, a motion was made to rescind the resolution rejecting the engine, which was lost, all the members present voting no, and only one being absent.

The council met again February 9, and passed the following resolution:

"Resolved, that the time having expired that was granted to the Mansfield Machine Works, at their request, to store their steam fire-engine in the engine-house, and the same now remaining therein, that the recorder be and is hereby instructed to immediately notify said company to remove the same from said house."

The notice was mailed to plaintiff the same day.

The company did not remove said engine, and it has stood in the village engine-house ever since, but has never been used by the village for any purpose.

W. S. Coon testified on the part of the plaintiff that during the trials he simply acted as engineer, and that he never, at any time, took said engine out of the possession or control of the defendant, and denied that he had any authority whatever to make any arrangement on behalf of plaintiff. He signed the contract of sale for the plaintiff, but had no power to act for plaintiff after such sale; that he generally went with the engines he sold, and attended the trials of the same. He did not deny asking for a new trial of the engine, or storage for the same.

Not hearing anything from the plaintiff in response to the notice sent, the president of the village, S. C. Bradfield, March 27, 1885, wrote a letter to plaintiff, again asking the company to remove the engine.

April 28, 1885, the plaintiff commenced suit in assumpsit in the Kent circuit court, and filed a declaration in said court, specially averring the contract, and fulfillment of the same on its part, and the acceptance of the engine by the defendant, its liability and refusal to pay, and also counting

upon the common counts. The defendant pleaded the general issue.

Upon the trial evidence was given upon the part of the plaintiff tending to show that the engine and its appointments were complete and perfect according to contract, and that when it was set up, and properly started, it worked well in every respect. The defendant introduced testimony tending to establish that the engine was not such an one as was specified in the contract, and that it did not work well at any time, and was entirely insufficient for the purposes for which it was purchased, and that it was rejected, and not accepted, on that account.

The circuit judge was of the opinion that—

" The agreement, in effect, was that the company would sell to the village the engine and hose in question, and that the village would become the purchaser of the same, and pay for them when accepted. As I construe this contract, there can be no doubt whatever that it was contemplated by the parties that there should be a test of the machine, which would precede the acceptance. In other words, that the acceptance was to be at the village of Lowell, and not when the machine was placed upon the cars at Mansfield; that the acceptance would involve an inspection and examination, at least, and, with this character of property, also a trial for the purpose of determining whether it answered the terms of the contract."

That the contract did not provide for the payment for the engine and machinery until accepted; that under its terms the property remained in the vendor until acceptance, the village never becoming the owner of it; that the remedy of the plaintiff, if any, would be a suit for a breach of the contract and refusal to accept on the part of the defendant; and therefore instructed the jury to find a verdict for the defendant, which they did.

Some eighteen errors are assigned as occurring upon the trial, but the main question lies upon the charge of the court.

The counsel for the plaintiff contends most strenuously that he has not mistaken the form of his action; that he had

a right to go to the jury upon the question whether the engine did not in all respects conform to the contract, and do its work well; and that, if the jury found in the affirmative, the plaintiff was entitled to judgment for the contract price of the machinery.

He argues that, under the contract, the place of delivery was at Mansfield, upon the cars, and that, a delivery being proved there, the plaintiff was not bound to show an acceptance by the defendant; that nothing further remained for the plaintiff to do; and, if the engine and machinery was shown to be the kind and quality purchased under the contract, defendant could not avoid its liability by a non-acceptance, and that plaintiff could recover the contract price in that action.

He cites a large number of authorities to sustain his position. If his premises are correct, that there was a delivery at Mansfield, and no further acceptance was necessary under the contract, there is no doubt of the soundness of his position.

But the clause in the contract in relation to delivery, acceptance, and payment was *written* in the *printed* form by the defendant's attorney, and *all* must be construed together.

We think the circuit judge was correct in his idea that the contract implied an inspection, examination, and trial of the engine before acceptance, and this opinion is borne out by the acts of the parties. The contract did not contemplate a delivery at Mansfield that should pass the title, as the title was expressly reserved to the plaintiff until paid for.

If it had been intended that the delivery on the cars at Mansfield should close the sale, there would have been no occasion for saying anything about acceptance in the contract, as no acceptance under the law would have been necessary, as the delivery itself would have passed the title without any acceptance. The word "delivery" in the contract evidently was not used in the sense contended for by plaintiff's counsel, nor so understood by either of the parties.

There is another thing. The contract is express that **no**

payment is to be made until after acceptance by defendant. The *written* portion of the contract, if inconsistent with any part of the *printed* form, must govern and control. It seems to me that a fair construction of the contract is that the village was not to pay for the engine unless they saw fit to accept it; that they were to be satisfied with the machine before they were obliged to accept or pay for it.

The delivery upon the cars at Mansfield had nothing whatever to do with the acceptance or payment; and the printed clause in the contract, to "take the engine and its attachments," is qualified and regulated, not only by the force and effect of the written clause, but by the addition also of the words "and to pay the money on or before the time and in such manner as above specified," referring manifestly back to the acceptance of the engine.

The language of Justice CAMPBELL in *Cole v. Homer*, 53 Mich. 440, seems to be applicable to the present case:

"When a village corporation desires to supply itself with hydraulic facilities it is a matter of common experience that it cannot be readily computed in advance just what will meet its supposed necessities. It is only by experiment that it can be known whether any proposed system will serve its purposes. Machinery may do all that it is warranted to do, and yet, by its workings, show that something else is required to supply the corporate needs. Most of the devices introduced here and there are urged, not merely as calculated to do prescribed work, but also on the ground that this work is just what the town requires. * * It is so usual to reserve a right to a preliminary trial, not to test particular capabilities, but to ascertain general fitness for general purposes, that where such provisions are inserted in contracts courts must see that they are respected."

There was no fraud upon the part of the village authorities. They needed a fire-engine, and were hurrying the plaintiff to ship the engine. The day it was received they telegraphed the company to send its man at once to try the engine. Two trials were had, in which it is admitted it failed to do good work. It was rejected at once. The third trial was only had at the request of and as a favor to plaintiff.

I cannot conceive that either the village authorities or the plaintiff supposed that the acceptance was to depend upon what experts from Grand Rapids, or anywhere else, might say or swear to.

It was evidently the intention of the contract, as gathered from the instrument itself, and from the acts of the parties, that the village itself should be presented with an engine that suited its needs, and to be determined by its authorities whether it should be accepted or not, as filling its requirements and necessities.

The judgment is therefore affirmed, with costs.

The other Justices concurred.