WILTSE *v.* SCHAEFFER.

1. PARTNERSHIP—REAL ESTATE—QUIETING TITLE.

Real estate, used in carrying on of partnership business or from which rent was collected, credited to the partnership and deposited in its bank account, and which was carried on the books as an asset of the partnership, mortgaged to secure a partnership debt, taxes and insurance thereon paid by the partnership, and depreciation on the buildings credited on income account as a business expense, was properly found to have been a partnership asset in suit to quiet title thereto.

2. SAME—DEATH—CREDITORS—LIENS.

Provision of the uniform partnership act that in the event of the death of a partner, his legal representative, unless otherwise agreed, may have the value of the interest of the deceased determined as of the date of dissolution and that he shall be entitled to receive such amount as an ordinary creditor, does not give the deceased's estate a lien upon the firm's assets for payment of the value of deceased's interest (CL 1948, § 449.42).

3. CONTRACTS—PARTNERSHIP—CONSTRUCTION.

A contract between members of a partnership must be construed in the light of the circumstances under which it was made and of the purpose that the parties sought to effectuate.

REFERENCES FOR POINTS IN HEADNOTES

[1] 40 Am Jur, Partnership, § 97 *et seq.*
[4–10] 33 Am Jur, Liens, § 6 *et seq.*
[8] 40 Am Jur, Partnership, § 265.
[8] Partner's lien on or interest in assets of partnership as affected by dissolution agreement. 43 ALR 95.
[12] 33 Am Jur, Liens, § 50.
[13] 33 Am Jur, Liens, § 10.

4. PARTNERSHIP — LIENS — CONTRACTS — DEATH — CONTINUANCE OF BUSINESS BY SURVIVOR.

> Lien upon partnership assets or interest of deceased partner therein for balance due estate of deceased partner from survivor *held*, inconsistent with terms of contract between the partners which clearly indicated that partner, now deceased, desired that business of partnership be continued after his death.

5. LIENS—INTENT—AMBIGUITY.

> An intent to create a lien may not be inferred from ambiguous language of a contract.

6. SAME—CREATION.

> Liens can only be created by agreement or by some fixed rule of law.

7. SAME—INTENT—EVIDENCE.

> An intention to create an equitable lien must clearly appear from the language of an agreement and the attendant circumstances, strict proof of such intention being required.

8. PARTNERSHIP—CONTRACT TO PURCHASE BY SURVIVOR—LIENS.

> Contract providing for purchase of a decedent's interest in partnership assets by surviving partner and that upon written notice thereof he should thereupon become the sole owner of the business subject only to the payment of the purchase price but which interest of the estate in the partnership, or in the assets thereof acquired by the surviving partner, were not specifically charged with the payment of the purchase price, did not evidence an intent to establish a lien for the benefit of the deceased's heirs, devisees and legatees, on the interest of the estate of the deceased partner in the assets of the partnership as they were at time of death of such partner.

9. SAME—CONTRACT OF PURCHASE BY SURVIVOR—CONSTRUCTION.

> Contract providing for purchase of a decedent's interest in partnership assets by surviving partner and that upon default in making payments the representatives of the deceased were to have all of the remedies incident to a winding up of partnership affairs constituted the survivor who elected to purchase the deceased's interest, the owner upon completion of stipulated payments with the partnership interest of the decedent vested in his estate until payments are made in full, with title to specific partnership assets vesting in the survivor pursuant to the uniform partnership act (CL 1948, § 449.1 *et seq.*).

10. SAME—CONTRACTS—LIENS.

Contract for purchase of decedent's interest in partnership assets by survivor, which did not manifest a clear intent to vest survivor with ownership of the partnership interest of the deceased partner subject to a lien for the purchase price, was silent touching enforcement of such a lien and specifically provided other remedies at variance with theory of lien, did not establish a lien.

11. CONTRACTS—DEFAULT—DESIGNATION OF REMEDY.

A designation of the specific remedies available in the event of default under a contract must be regarded as indicating that the parties did not have in mind any other or different remedy.

12. LIENS—CONTRACTS—CONSTRUCTION.

Parties seeking to establish a lien by virtue of a contract have the burden of establishing the construction of the agreement contended for by them.

13. SAME—OWNER OF PROPERTY.

An owner of property may not have a lien thereon.

14. CONTRACTS—LIENS.

A contract that by its terms clearly contemplates a lien on property must be given effect accordingly.

15. PARTNERSHIP—CONTRACTS—LIENS.

Contract for purchase by survivor of deceased partner's interest in partnership assets, executed over 10 years before death of defendant's testate partner, when construed in the light of circumstances under which it was made excludes intent to have created a lien upon decedent's interest or the partnership assets.

16. COURTS—PROBATE COURT—PARTNERSHIP—LIENS—CONTRACTS—DEFAULT.

In making an order approving and confirming rights of plaintiff, the surviving partner and executor of deceased partner's estate and purchaser of decedent's interest in the partnership pursuant to contract, executed over 10 years before death of decedent, the probate court did not undertake to construe contract and was without authority to declare a lien upon interest or assets sold and use of term that title and ownership of plaintiff should be "subject to defeasance" only upon failure to make payment of balance of purchase price did not create a lien but merely set up method by which surviving partner might lose the interest he purchased.

17. JUDGMENT—RES JUDICATA—QUIETING TITLE—PROBATE COURT—
      PARTNERSHIP—CONTRACTS—EXECUTORS AND ADMINISTRATORS.
     Decree quieting title in plaintiff as surviving partner who had
        elected to purchase deceased partner's interest in partner-
        ship assets, including real estate, was not inconsistent with
        previous unappealed probate court order approving and con-
        firming rights of plaintiff as surviving partner, executor of
        the deceased partner's estate and purchaser of decedent's
        interest in the partnership pursuant to contract that had been
        executed upwards of 10 years prior to death of decedent,
        even if legatees of deceased were in a position to insist upon
        existence of lien contended for.

Appeal from Washtenaw; McDonald (Archie D.),
J., presiding. Submitted January 3, 1950. (Docket
No. 11, Calendar No. 44,592.) Decided April 3, 1950.

Bill by Arthur J. Wiltse, as surviving partner of
The Ann Arbor Press, against Margaret Schaeffer
and others to construe and reform a warranty deed
to make plaintiff and his then partner tenants in part-
nership and to quiet title in plaintiff. Cross bills by
defendants against plaintiff to establish lien on part-
nership assets. Decree for plaintiff. Defendants
appeal. Affirmed.

*George Meader* and *Hooper & Blashfield,* for plain-
tiff.

*DeVine & DeVine* and *James O. Kelly,* for defend-
ants.

CARR, J. Prior to January 2, 1932, Horace G.
Prettyman owned and operated a general printing
business in the city of Ann Arbor. On that date he
entered into a written contract with the plaintiff
whereby he conveyed to the latter a 3/40 interest in
said business, for the sum of $15,000, and the two
men became partners for the continuance of opera-
tions under the firm name of The Ann Arbor Press.
This case involves the interpretation of certain pro-
visions of said contract, the determination of the

rights of plaintiff and defendants thereunder, and also plaintiff's rights as surviving partner.

At the time of the making of the agreement the record title to the real estate used in the carrying on of the business was in the name of Horace G. Prettyman, and so continued until September 4, 1934, when Mr. Prettyman executed to plaintiff a warranty deed of a 3/40 interest in said property. The instrument of conveyance made no reference to the partnership, nor to the use of the real estate in question. The contract between the parties, as originally made in 1932, provided in paragraph 14 that in the event of the death of either partner the survivor should have the right to purchase the interest of the deceased in the business assets and good will, the price to be based on the last audit. On November 2, 1939, this provision was amended and amplified to read as follows:

"WHEREAS, the parties hereto heretofore, to-wit, on the 2nd day of January, 1932, entered into an agreement of copartnership and have since said date operated the business known as The Ann Arbor Press as such partners, and

"WHEREAS, it is the desire of both partners hereto that the institution created and developed by them and known as The Ann Arbor Press continue as an institution and grow not only in size of plant and volume of business, but also in quality and artistry of printing produced, and

"WHEREAS, the partners are aware that a sudden and unexpected dissolution of the partnership by reason of the death of either of the partners might seriously impair credit of the institution and compel a winding up of its affairs, with a possibility of financial loss to each of them or to their several estates, as well as the probable destruction of The Ann Arbor Press as an institution, and

"WHEREAS, it is the desire of the partners not only to prevent loss by reason of such forced liquidation to the surviving partner and a similar loss to the es-

tate of the deceased partner, but also to provide insofar as it is legally possible so to do for the continued existence and growth of the institution known as The Ann Arbor Press.

"Now THEREFORE, in consideration of the premises and the mutual covenants and advantages which arise therefrom, it is hereby mutually agreed by and between the parties hereto as follows:

"1. Paragraph 14 of said copartnership agreement, dated January 2, 1932, is hereby amended to read as follows: (14) Upon the dissolution of said partnership by reason of the death of either partner, and for a period of 60 days thereafter, the business of the partnership and the institution known as The Ann Arbor Press is to continue as nearly in all respects the same as if said deceased partner were still alive and said partnership had not been dissolved, and full authority to manage the affairs of said business, not only for the purpose* of continuing the business, is hereby granted by each partner to the other for said period.

"Within 30 days after such dissolution, an audit of the books shall be taken which shall show the relative interests of the partners as of the date of such dissolution. Within 60 days from such dissolution, the surviving partner shall elect whether to wind up the affairs of the partnership according to law or to purchase the interest of the deceased partner.

"In the event the surviving partner elects to purchase the interests of the deceased partner, he shall give written notice of such election within said 60-day period to the legal representative of the deceased partner and shall thereupon become the sole owner of the business, subject only to the payment of the purchase price. Such price shall be the value of the interest of the deceased partner as shown by said audit and said price may be paid by the surviving partner to the legally designated representative of

---

* It is claimed that the following quoted matter was inadvertently omitted from the record at this place: "of winding up the affairs of the partnership but also for the purpose"—REPORTER.

the deceased partner at the rate of $10,000 annually without interest, the first of which annual payments shall be paid 1 year after notice of election to purchase and such payments shall continue until the full amount of the purchase shall be paid, *provided, however,* that said surviving partner shall have the right to pay all or any part of the unpaid balance at any time, in addition to the amounts herein required, and simultaneously with the payment in full of the balance of such purchase price, the legally designated representative of the deceased partner shall execute appropriate documents of conveyance, and provided further, that while said surviving partner is not in default in making the payments herein required, no action for accounting may be brought by the representatives of the deceased partner, but in the event of a default, all of the remedies incident to a winding up of partnership affairs, as provided by law, shall be available to the representatives of the deceased partner."

Under date of March 15, 1945, Mr. Prettyman executed a last will and testament, in which plaintiff was designated as executor and as a beneficiary. The defendants in the instant case, or their assignors, were also named as beneficiaries. Reference was made to the desire of the testator for the perpetuation of The Ann Arbor Press in accordance with the terms of the partnership agreement into which he and plaintiff had entered. Shortly after the execution of the will Mr. Prettyman died, and probate proceedings were duly instituted. Plaintiff elected to purchase the interest of the deceased partner in the business, in accordance with the provisions of the agreement as above set forth, and petitioned the probate court to approve and confirm the purchase. An order was entered in accordance with the prayer of the petition, providing also that the personal obligation of plaintiff to make "full payment for the said interest in accordance with the articles of partner-

ship and the statutes made and provided, shall stand in lieu of the said interest of said deceased partner in the assets of said estate."

In January, 1946, plaintiff filed a further petition in the probate court reciting that in accordance with the agreement the interest of Horace G. Prettyman in The Ann Arbor Press had been fixed by an audit at the sum of $102,377.04. Approval of the purchase price was sought. Following notice and hearing, an order was duly entered in accordance with the petition. Said order followed the terms of the contract between the partners, providing in part as follows:

"It is further ordered that simultaneously with the payment in full of the balance of such purchase price, Arthur J. Wiltse, executor of the estate of Horace G. Prettyman, deceased, or his successor, shall execute appropriate documents of conveyance for such property and interest and deliver the same to Arthur J. Wiltse, or his heirs, successors or assigns; provided further, that while said Arthur J. Wiltse is not in default in making the payments herein, and in the amendment to the articles of partnership of The Ann Arbor Press, provided for, no action for accounting may be brought by the representatives of said Horace G. Prettyman, deceased, but in the event of default, all of the remedies incident to the winding up of the partnership affairs, as provided by law, shall be available to the representatives of said Horace G. Prettyman, deceased.

"It is further ordered that until the payment in full of the balance of such purchase price, a properly certified copy of this order and decree may be filed with, and recorded by, the register of deeds as evidence of the right, title and ownership of said Arthur J. Wiltse in the business, properties and assets of The Ann Arbor Press, which right, title and ownership shall be perfect and subject to defeasance only upon failure to make payment of the balance of said purchase price as hereinabove specified."

The instant suit was brought by plaintiff, as surviving partner, on June 26, 1948, for the purpose of having the deed of September 4, 1934, above referred to, reformed and construed as a conveyance of the entire interest in the real estate in question to the partnership, and to quiet title thereto as against the defendants, the residuary legatees and devisees named in the will of Horace G. Prettyman, or assignees of such beneficiaries. Defendants by their answers denied that the real estate was partnership property, and asserted that plaintiff as surviving partner was not entitled to the relief sought. Defendants also filed cross bills, asking by way of affirmative relief that the court decree that the estate of Horace G. Prettyman "has a lien upon all of the real estate and assets of The Ann Arbor Press or the interest of Horace G. Prettyman in The Ann Arbor Press for the balance of the purchase price of said business by the surviving copartner, the plaintiff and cross-defendant herein, Arthur J. Wiltse." Following trial in the circuit court a decree was entered granting the relief sought by the plaintiff, and declaring that plaintiff, as surviving partner, was the owner of the real estate described by a title perfect as against the defendants, and that defendants had no right, title or interest in said property or any lien thereon. Defendants and cross-plaintiffs have appealed.

The proofs taken on the trial indicate conclusively that the real estate involved in the case was treated by the partners as partnership property. A portion of it was used in the carrying on of the business. A parcel was leased for a term of years, and the rent collected was credited to the partnership and deposited in its bank account. With the apparent knowledge and approval of both Mr. Prettyman and plaintiff, the real estate was carried on the books as an asset of the partnership, and was so considered in

an auditor's report made in February, 1934. It was mortgaged by the partnership to secure a partnership debt. The taxes and insurance thereon were paid by the partnership, which took credit in its income account for the item of depreciation on the buildings as a business expense. Appellants' reasons and grounds for appeal designate the court's finding that the real estate was partnership property as in error. However, the claim is not pressed in this Court, and we find in the reply brief of counsel for the appellants the statement that "It is admitted by both parties now that the real estate was one of the assets of the partnership." On the record before us, this phase of the controversy does not call for further consideration. The trial court correctly determined the issue.

The claim advanced on behalf of appellants that they are entitled to a lien as prayed in their cross bills rests on the theory that the agreement between the partners, as set forth in the language above quoted therefrom, should be construed as contemplating such lien. Counsel in their briefs have called attention to various provisions of the uniform partnership act (CL 1948, § 449.1 *et seq.* [Stat Ann § 20.1 *et seq.*]). No claim has been made in this Court, however, either in the briefs or in the oral arguments of counsel, that any provision of the statute gives rise to the lien. It may be noted in this connection that CL 1948, § 449.42 (Stat Ann § 20.42) provides that in the event of the death of a partner, his legal representative, unless otherwise agreed, may have the value of the interest of such deceased partner determined as of the date of dissolution, and shall be entitled to receive such amount "as an ordinary creditor." In consequence the primary question at issue is the interpretation of the agreement into which the partners entered.

The contract in question must be construed in the light of the circumstances under which it was made and of the purpose that the parties sought to effectuate. Such rule of construction has been repeatedly recognized and applied by this Court. *Cleveland* v. *Detroit Trust Co.,* 264 Mich 253; *Biltmore Land Co.* v. *Estate of Munro,* 271 Mich 125; *Fox* v. *Detroit Trust Co.,* 285 Mich 669; *Moulton* v. *Lobdell-Emery Manufacturing Company,* 322 Mich 307; 17 CJS, p 689. It is apparent that Mr. Prettyman had great confidence in the ability and integrity of the plaintiff. It is equally clear, as shown by the recitals in the supplemental agreement of November 2, 1939, above quoted, and by the provisions of his will, that Mr. Prettyman desired the business conducted by the partnership to continue after his death. There is much force in the argument of plaintiff that to construe the language of the contract as contemplating a lien, either on the assets of the partnership or on the interest of the estate of the deceased partner therein, would be inconsistent with the expressed purpose of the parties as set forth in the agreement, which must of course be construed in the light of the situation existing at the time it was made.

An intent to create a lien may not be inferred from ambiguous language of a contract. Rather, such intent must clearly appear. 53 CJS, p 841. As said in *Frost* v. *Atwood,* 73 Mich 67, 73 (16 Am St Rep 560):

"No rule is better settled than that liens can only be created by agreement, or by some fixed rule of law. It is not one of the functions of courts to create them."

*Dehn* v. *Dehn,* 170 Mich 407; *Cheff* v. *Haan,* 269 Mich 593; *Whitehead* v. *Barker,* 288 Mich 19. Such appears to be the commonly accepted rule. In *Pennsylvania Oil Products Refining Company* v. *Willrock*

*Producing Company, Inc.,* 267 NY 427 (196 NE 385), it was said:

"It may be pointed out that to find an equitable lien it is necessary that an intention to create such a charge clearly appear from the language and the attendant circumstances. Strict proof of such intention is required. As was said in the case of *Di Niscia* v. *Olsey* (162 App Div 154, 155 [147 NYS 198]): 'The respondent would maintain this judgment on the theory of equitable lien. The difficulty in the way of affirmance is that proof of a breach of the contract only does not warrant this decree of the equity court. There should also appear proof that clearly established the intention that the premises would "be held, given or transferred as security for the obligation" of the contract. (Pomeroy's Equity Jurisprudence [3d ed], p 1235; 19 Am & Eng Ency of Law [2d ed], 15; *Wright* v. *Ellison,* 1 Wall [68 US] 16 [17 L ed 555].)' "

See, also, *O'Connor* v. *Einfeldt,* 164 Minn 422 (205 NW 268); *Stone* v. *First National Bank,* 100 Or 528 (193 P 1023, 197 P 304, 198 P 244); *James* v. *Alderton Dock Yards, Limited,* 256 NY 298 (176 NE 401); *Morrison* v. *Havens,* 24 Cal App2d 504 (75 P2d 515).

In support of their claim as to the intent of the parties, appellants emphasize the provision of the supplemental agreement of November 2, 1939, that upon election by the surviving partner to purchase, and written notice thereof, he "shall thereupon become the sole owner of the business, subject only to the payment of the purchase price." It is argued that this evidences an intent to establish a lien, for the benefit of heirs, devisees and legatees, on the interest of the estate of the deceased partner in the assets of the copartnership as they were at the time of the death of such partner. Reliance is placed on *Phillipson* v. *Phillipson,* 302 Mich 84. There the will, the construction of which was involved in the case,

gave testator's interest in a partnership to the surviving partners, in trust for certain purposes, and directed the trustees to pay to the widow of the testator the sum of $35,000. The will specifically provided "the property herein conveyed in trust shall be charged with the payment" of the said sum. It was held that the surviving partners took testator's undivided one-third interest in the partnership charged with the payment of the sum of $35,000 to the plaintiff, testator's widow, and that she was entitled to a lien as security therefor. In the instant case the interest of the estate of the deceased partner in the partnership, or in the assets thereof acquired by the surviving partner, was not, in specific terms, *charged* with the payment of the purchase price. Rather the language used implies, as plaintiff contends, that the surviving partner, exercising the election to purchase the interest, becomes the owner when he completes payment therefor in accordance with his agreement. Default in the making of the required payments leaves defendants with "all of the remedies incident to a winding up of partnership affairs, as provided by law." On the completion of the payments, the execution of "appropriate documents of conveyance" is required. The language used tends to support the claim of plaintiff that the partnership interest of Horace G. Prettyman remains vested in his estate until the purchase price is paid in full, with the title to specific partnership assets vesting in plaintiff *as surviving partner* in accordance with the provisions of the uniform partnership act.

It may be assumed that if the parties to the agreement had intended to provide for a lien they would have done so in clear and unambiguous terms. Language analogous to that contained in the will involved in the *Phillipson Case, supra,* would doubtless have been used. It cannot be said that there is mani-

fest here a clear intent to vest the surviving partner with ownership of the partnership interest of the deceased partner subject to a lien for the purchase price.   There is nothing in the agreement touching the enforcement of such a lien, and the specific provision that the representatives of the deceased partner shall, in the event of a default, have the remedies incident to a winding up of partnership affairs is at variance with the theory of a lien.   A designation of the specific remedies that will be available in the event of default must be regarded as indicating that the parties did not have in mind any other or different remedy.

In order to be entitled to the relief sought by their cross bills, appellants have the burden of establishing the construction of the agreement contended for by them.   This they have failed to do.   If plaintiff's theory is correct, obviously there is no lien for the reason that as a general rule an owner of property may not have a lien thereon.   *Litchfield* v. *Ballou,* 114 US 190 (5 S Ct 820, 29 L ed 132).   A contract that by its terms clearly contemplates a lien on property must be given effect accordingly, *Walker* v. *Brown,* 165 US 654 (17 S Ct 453, 41 L ed 865), but the agreement in the instant case may not be so construed.   The specific language used, read in the light of the circumstances under which the contract was made, excludes any such intent.

Appellants further claim that the present action by the plaintiff is in effect a collateral attack on the order entered by the probate court of Washtenaw county on February 15, 1946, approving the purchase price of the partnership interest of Horace G. Prettyman in the partnership known as The Ann Arbor Press.   It is insisted that such order, not having been appealed, became final and that it indicated the intention of the parties to the agreement in controversy.   The argument is advanced that the decree

of the circuit court from which cross-plaintiffs have appealed is inconsistent with the language of the probate order, and that for such reason the decree is erroneous.

In considering the objection it must be borne in mind that the purpose of the proceeding in the probate court was to obtain an order approving and confirming the rights of the plaintiff under his contract with Mr. Prettyman. It is significant that in the main the language of the order granted on such petition followed the provisions of the contract. It does not appear that the probate court undertook to construe the contract, nor was it concerned with any possible claim of a lien in favor of the appellants here upon the real estate of The Ann Arbor Press. Such court was without authority to declare a lien of the character claimed. *Ashbaugh* v. *Sinclair,* 300 Mich 673. Some emphasis is placed on the provision in the probate order that the right, title and ownership of the plaintiff should be "subject to defeasance" only upon his failure to make payment of the balance of the purchase price. It is stated by appellants in their brief that the expression quoted is "the language of a lien." As before stated, however, the jurisdiction of the probate court was not invoked to declare a lien. The logical interpretation of the phrase emphasized is that, as provided in the agreement, the rights of the surviving partner electing to purchase the interest of the deceased partner may be lost only by default in making payments.

It may be noted also that plaintiff instituted the present suit for the purpose of obtaining a decree for the reformation of the deed, and to quiet title to real estate in himself as surviving partner. The question as to a lien was raised by appellants in their cross bills. On the record before us it may well be questioned if they are now in position to insist that the existence of the lien had been adjudicated in

their favor by the order of the probate court. In any event, the claim is without merit. Construed in the light of its obvious purpose, there is no inconsistency between the probate order, on which appellants rely, and the decree from which they have appealed.

The decree of the trial court is affirmed, with costs to plaintiff.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.