Lawrence **BERK** and Eugene Brownstein, doing business as Morris Poultry Company, Plaintiffs,

v.

**GORDON JOHNSON COMPANY**, a Missouri corporation, Defendant.

Civ. A. No. 22684.

United States District Court
E. D. Michigan, S. D.
July 21, 1964.

See also D.C., 212 F.Supp. 365.

684

---

Bernard J. Fieger, Detroit, Mich., for plaintiff.

Lucian Lane, Tucker, Murphy, Wilson, Lane & Kelly, Kansas City, Mo., Harold Mountain, Jr., Freud, Markus, Slavin & Mountain, Detroit, Mich., for defendant.

FREEMAN, District Judge.

This is a motion for summary judgment by the defendant Gordon Johnson Company as to an action for breach of warranty in a suit by the plaintiffs, Lawrence Berk and Eugene Brownstein.

In 1961, Berk and Brownstein were copartners doing business as the Morris Poultry Company, and were engaged in the business of butchering and merchandising poultry, at wholesale, for kosher poultry markets in the Detroit area. They conducted their business in accordance with the laws of ritual slaughter prescribed by the Jewish faith. The actual slaughter and processing of the poultry was carried out largely by hand, and, consequently, the operation proved to be too small for Morris Poultry Company to compete with out-of-town companies who could sell to local consumers in larger bulk. In order to meet the out-of-town competition, plaintiffs hoped to increase the size of their operation by the purchase of automated equipment which was capable of producing kosher poultry for market. Accordingly, negotiations were commenced between Berk and Brownstein and a Mr. Harold Flowers, a salesman for the defendant Gordon Johnson Company, which makes equipment for the automated processing of poultry. Flowers learned of the needs of the poultry company on a visit to its premises in May of 1961. Within a month, Flowers returned from the home office of the Gordon Johnson Company in Kansas City with a drawing showing how appropriate equipment from Gordon Johnson Company would fit into the premises of the Morris Poultry Company. On the lower right-hand corner of the drawing were written the words "Kosher operation".

Subsequently, on July 3, 1961, Brownstein signed an order for the purchase of poultry processing equipment on forms prepared by defendant, Gordon Johnson Company. Conditions of the order, including two paragraphs concerning warranties, were set forth in relatively small print on the reverse side of the forms. The seller therein expressly warranted its products to be free from defects in material and workmanship under normal use and service, and agreed to repair or replace any material or product which was proved within 90 days to have been defective at the time of shipment. The language continued: "This Warranty to repair is the only warranty either expressed, or implied or statutory, on which the Purchaser purchases the Seller's products * * * All other warranties, implied, expressed, or statutory, are expressly waived by the Buyer." In another paragraph, the following language was also printed: "No representation or warranty in any form, and regardless of by whom made, that is not expressed in this Purchase Contract, shall be binding on, or enforceable against Gordon Johnson Company." It was also stated on the back of the form that all orders were subject to final acceptance at the Home office of the Gordon Johnson Company in Kansas City, Missouri.

Pursuant to such order, the equipment was delivered and installed at the premises of Morris Poultry Company in August, 1961. The equipment was unsatisfactory to Berk and Brownstein in their operations over the following months. Accordingly, they brought this suit against Gordon Johnson Company for breach of warranty and also for fraud. In the warranty count of their complaint, they alleged that they were damaged "by loss of business because of failure

of the equipment to produce poultry of the kind and quality required, by the increase in the amount of defective poultry produced, by the requirement to secure additional labor to complete the process that the machine was supposed to complete and by other expenses incurred as a direct result of the failure of the equipment to comply with the above mentioned warranty."

In support of their complaint, Berk and Brownstein rely on the words "Kosher operation" in the drawing, which they claim is a part of the contract for the purchase of the equipment. Plaintiffs claim that the words "Kosher operation" are an express warranty of fitness for the intended purpose, which the defendant has breached. Plaintiffs also rely on an implied warranty of fitness under § 19.255 of the Michigan Statutes Annotated, Comp.Laws 1948, § 440.15. This provision of the Uniform Sales Act, in force in Michigan at the time of the contract, reads as follows: "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

The case is now before this Court on a motion for summary judgment by the defendant Gordon Johnson Company as to the warranty count on the ground that the express language of disclaimer of warranty on the order form signed by Brownstein is sufficient to negative any other express or implied warranties, including the alleged express warranty in the words "Kosher operation" and the warranty of fitness implied by statute. In support of its contention, the defendant argues that even if the drawing is considered to be part of the contract, the words "Kosher operation" cannot be considered an express warranty in light of the express language of disclaimer on the back of the order form. Moreover, the defendant argues that the language of disclaimer, being inconsistent with an implied warranty of fitness for a particular purpose, negatives any such warranty in light of subsection (6) of § 19.255 of the Michigan Statutes Annotated, which reads: "An express warranty or condition does not negative a warranty or condition implied under this act *unless inconsistent therewith.*" (Emphasis added).

The parties are in disagreement as to whether Michigan or Missouri law should apply, although they agree that under the controlling Michigan conflict of laws rule, contracts are governed by the law of the state where the last act necessary to create the contract occurs. Plaintiffs say Michigan law should apply because the final necessary act to create the contract was the delivery of the equipment in Michigan. Defendant, on the other hand, argues that Missouri law is controlling because the final acceptance in Kansas City of the order was the final necessary act. However, for purposes of the motion for summary judgment, defendant argues that it makes no difference which law is applied, since the law of both states is substantially the same in all relevant respects. Although the Uniform Sales Act was not adopted in Missouri at the time of the contract, Missouri case law apparently supports the propositions of the Michigan statute cited by both parties. For purposes of this motion, therefore, the conflict of laws question need not be resolved.

This Court is in accord with the defendant's contention that the express language of disclaimer of warranties "implied, express, or statutory" is sufficient to negative an implied warranty of fitness arising under § 19.255 of the Michigan Statutes Annotated or the Missouri case law. The language of disclaimer is clearly inconsistent with any implied or statutory warranty and, therefore, negatives any such warranty according to subsection (6) of § 19.255 of the Michigan Statutes Annotated. Moreover, according to Missouri law, "where there are express warranties in a contract, implied warranties are excluded, if it is apparent those expressed were in-

tended to embrace all the obligations assumed by the warrantor * * *. An implied warranty is one the law derives by inference from the nature of the transaction or of the relative situation or circumstances of the parties. 35 Cyc. p. 366. There can be no such inference when the parties themselves expressly provide to the contrary, as in this case." Little v. Widener, 226 Mo.App. 525, 32 S.W.2d 116, 117 (1930). This Court holds as a matter of law that the plaintiffs cannot prevail in the first count of their complaint on a theory of breach of implied warranty.

■ On the other hand, this Court also holds that the plaintiffs are not barred as a matter of law from prevailing in their suit for breach of express warranty. In order to prove a breach of express warranty by the defendant, plaintiffs must establish three propositions: (1) the drawing prepared by the defendant company showing how its equipment would fit into the plaintiffs' premises is an integral part of the contract for sale of the equipment; (2) the language "Kosher operation" written on the drawing is an express warranty of fitness by the defendant that the equipment would, in fact, be adequate for the plaintiffs' kosher operation; (3) the express warranty of fitness in the words "Kosher operation" binds the defendant despite the language of disclaimer on the back of the order form.

For purposes of this motion, the defendant is willing to concede that the drawing is part of the contract. Despite the fact that the drawing is labeled "Preliminary Drawing", there is not enough evidence before the Court upon which to conclude as a matter of law that the drawing is not, in fact, part of the contract, but only a preliminary document. Whether or not the drawing is part of the contract is a question of fact concerning which, in a motion for summary judgment, the inferences must be drawn most favorably to the plaintiff. McHenry v. Ford Motor Co. (CA 6, 1959), 269 F.2d 18. Evidence now before the court supports at least an inference favorable to

plaintiffs that the drawing was in fact, part of the contract.

■ Although the words "Kosher operation" are not expressly labeled as a warranty and may not have been intended by the defendant as a warranty, nevertheless the claim of plaintiffs that they relied on the words as a warranty, and the ambiguity of the words as they appear on the face of the drawing, are sufficient to sustain an inference that the words did amount to an express warranty of fitness for the intended purpose. Hence, the second proposition, that the words "Kosher operation" amount to an express warranty of fitness in the contract for sale of the equipment, is likewise an inference from the evidence which must be drawn favorably to the plaintiff on a motion by defendant for summary judgment.

The third proposition, that the express warranty overrides the language of disclaimer, raises a question of law which must be decided by legal rules for the construction of contracts. Assuming for purposes of the motion that the drawing is part of the contract, and that the words "Kosher operation" on the drawing are an express warranty of fitness, the Court must resolve the conflict between the inconsistent clauses in the contract against the disclaimer of warranty if the plaintiffs' complaint is to survive a motion for summary judgment.

Defendant contends that even if the words "Kosher operation" are construed as an express warranty, it is rendered inoperable by the subsequent disclaimer. Plaintiffs argue that if an express warranty was intended, then the language of disclaimer is not controlling because the specific language of the express warranty is stronger evidence of the parties' true intent.

It cannot be said as a matter of law that the language of disclaimer must prevail over the language of the drawing if the clauses are inconsistent. No cases appear to hold that an express warranty in a contract is cancelled by an express disclaimer of warranty in the same con-

tract. Indeed, Differential Steel Car Co. v. MacDonald (CA 6, 1950), 180 F.2d 260, suggests otherwise. In that case, a statement in the contract that engines were of the highest quality and of ample capacity to meet the specified performance was held to be a guaranty of performance despite another statement in the contract that certain performances of the engine were not guaranteed.

Moreover, general rules for the construction of contracts do not support defendant's position that the language of disclaimer must prevail over the language of the drawing. In the first place, it is well established that rules of construction are resorted to only where the language of the contract is ambiguous and susceptible of different meanings. In such case the court must construe the contract to give effect to the parties' intention. The contract must be construed as a whole to give effect to all its parts, if possible, but without giving disproportionate emphasis to any particular part. Separate instruments of the contract will be construed together. In the instant case, a basic ambiguity arises in the contract as a result of the inconsistency of the language of the disclaimer and the drawing. These conflicting clauses must be construed so as to effectuate the intention of the parties as gathered from the entire instrument. The clause contributing most essentially to the contract is entitled to the most consideration. Storm v. United States, 243 F.2d 708, 711 (CA 5, 1957). Moreover, if two clauses are so repugnant that they cannot stand, the first will ordinarily prevail over the second. Klever v. Klever, 333 Mich. 179, 52 N.W.2d 653 (1952). This rule is arbitrary, but it has been used where the second clause was on the back of the contract. Larabee Flour Mills Corporation v. West Plains Commission Co., 216 Mo. App. 257, 262 S.W. 389, 391. A further rule of construction is that handwriting will prevail over printed language. Mansfield Machine Works v. Common Council, 62 Mich. 546, 29 N.W. 105 (1886). Also, general provisions will yield to specific provisions. Hollerbach

v. United States, 233 U.S. 165, 34 S.Ct. 553, 58 L.Ed. 898 (1914). In addition, where the language of the contract is susceptible of more than one interpretation, as for example when there are inconsistent clauses in the contract, the court, in ascertaining the intention of the parties, should construe the contract in light of the situation and relation of the parties and the circumstances surrounding them at the time of contracting, the nature and situation of the subject matter, and the apparent purpose of making the contract. Plano Manufacturing Co. v. Ellis, 68 Mich. 101, 35 N.W. 841 (1888); Gee v. Olson, 320 Mich. 274, 30 N.W.2d 867 (1948); Wiltse v. Schaeffer, 327 Mich. 272, 42 N.W.2d 91 (1950). Further, under the rule that the general and leading purpose of the contract should control minor inharmonious provisions, where two purposes or intents may be inferred from the language used in the contract, and the main purpose clearly appears, the main purpose will control. Weaver v. Weaver, (Civ.App.Texas, 1943), 171 S.W.2d 898. Finally, to the extent that a contract is susceptible of two constructions by reason of doubt as to the meaning of ambiguous language, it is to be construed most strictly against the party by whom the ambiguous language is used. Detroit Trust Co. v. Mason, 309 Mich. 281, 15 N.W.2d 475 (1944).

In the instant case, several of the above listed rules of construction favor the plaintiff. The words "Kosher operation" must be considered the first clause of the contract and the language of disclaimer the second clause, because the disclaimer is on an instrument dated later in time. Thus, the rule that the first clause prevails over the second, where the two clauses are inconsistent, operates in favor of the claimed express warranty, especially where the second clause is on the back of the contract. Moreover, the rule that handwriting prevails over printed language favors the plaintiffs, because the words "Kosher operation" are written out, but the disclaimer is part of a printed form. The rule that general provi-

sions yield to specific provisions also favors plaintiffs because the language of the claimed warranty is more specific than the general language of disclaimer as to the existence of such a warranty. In addition, the rule that language is construed most strictly against the party by whom it is used favors the plaintiffs, since both the drawing and the disclaimer were prepared by the defendant.

For the purpose of this summary judgment motion, the other rules of construction above referred to cannot be invoked in favor of either party for lack of sufficient evidence upon which to base their application. The rules that the clause contributing most essentially to the contract is entitled to most consideration, and that the main purpose of the contract controls inharmonious provisions, require a further determination as to whether the claimed warranty contributed more essentially to the contract and its main purpose than did the language of disclaimer.

It is clear that the rules of construction herein discussed do not entitle the defendant to a summary judgment on the ground that the language of disclaimer negatives any warranty.

■ As a further aid to interpretation of contracts in which there is a conflict in the language as to the existence of an express warranty, the Uniform Commercial Code has relevant provisions. The Code is not binding in this suit because it had not yet been adopted in Michigan at the time the contract was made. Nevertheless, the Court may properly look to its provisions for suggestions in interpreting conflicting clauses of a contract. Section 2–316 of the 1952 version of the Code stated simply, in subsection (1), "If the agreement creates an express warranty, words disclaiming it are inoperative." The Michigan version of this provision modifies the 1952 language, but the spirit of the provision remains the same. Section 19.2316

of the Michigan Statutes Annotated, subsection (1), Comp.Laws 1948, § 440.2316, Pub.Acts 1962, No. 174, reads as follows: "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable."

In accord with the Uniform Commercial Code that language of disclaimer of warranty should not be favored is a note, "Warranties, Disclaimers and the Parol Evidence Rule," in 53 Columbia Law Review 858 (1953). This note reads, at page 868: "Although in theory disclaimers can be executed which give the seller absolute protection, in practice the courts have evidenced their distaste for disclaimers by narrowly construing them. They have constantly seized upon any possible loophole in the language to find that it did not bar all warranties * * * The tendency to construe disclaimers strictly is probably due to a commendable judicial feeling that, whenever possible, a court should enable the buyer to obtain something for his money."

■ In light of the absence of case law favoring disclaimers over express warranties, the effect of conventional rules of construction in the instant case favoring the claimed warranty over the disclaimer if the clauses are inconsistent, and the recommendations of the Uniform Commercial Code as to conflicts of warranties and disclaimers, this Court holds that if the words "Kosher operation" are assumed to be an express warranty in the contract, the language of disclaimer cannot be said as a matter of law to negative that warranty. Therefore, the defendant's motion for summary judgment on the breach of warranty count of the plaintiffs' complaint must be denied. An appropriate order may be submitted.