In the Matter of the Judicial Settlement of the Intermediate Account of Proceedings of EMMA S. STARBUCK, as Executrix of CHARLES A. STARBUCK, Deceased.

Surrogate's Court, Westchester County, April 27, 1927. ·

**Corporations — stock — testator, indebted to bank, owned twenty-six shares of its capital stock — bank, pursuant to Stock Corporation Law, § 66, printed upon stock certificates provision giving it right to refuse transfer in event stockholder is indebted to it — bank refused to transfer stock — statute does not give bank lien — estate can pay only twenty-two per cent of indebtedness — executrix directed to turn over stock to bank at market value — with dividends retained by bank, value of stock can be applied to bank's pro rata share of assets.**

The testator, who was indebted to a bank, owned twenty-six shares of its capital stock, on the certificates of which was printed section 66 of the Stock Corporation Law, providing that if a stockholder is indebted to the corporation, the directors may refuse to transfer the certificates on the books of the corporation until the indebtedness is paid. Decedent's indebtedness was much greater than the value of the stock and the collateral held by the bank and the bank refused to consent to the transfer of the stock certificates.

The bank is not obliged to transfer the stock until the indebtedness of the decedent is paid. But the statute does not give a lien to the bank upon the stock, or a right to the retention of the dividends.

On an accounting proceeding, in which it appears that the estate can pay only twenty-two per cent of its indebtedness, the executrix is directed to turn over said twenty-six stock certificates to the bank at the market value thereof on the date of delivery, which, together with the stock dividends retained by the bank, are to be applied to the bank's *pro rata* share in the assets of the estate.

INTERMEDIATE accounting by executrix.

*Stuart McNamara* [*Henry L. Wheeler, Jr.*, of counsel], for Empire Trust Company.

*Graef & Arnold* [*Arthur W. Graef* of counsel], for the executrix.

SLATER, S. The estate is large in amount of assets, as well as in debts, is insolvent, and the distribution will be to creditors in a *pro rata* amount. The main question arises regarding the disposition of twenty-six shares of the capital stock of the Empire Trust Company of the present value of about $386 per share, or a sum total of $10,036. The facts have been stipulated. The decedent died May 29, 1925. The Empire Trust Company is a creditor to the extent of $78,000 because of several notes, the most made prior to the acquisition of his largest purchase of stock. Pursuant to section 66 of the Stock Corporation Law of 1923, the trust company printed upon their certificates ·of capital stock a copy of section 66 in these words: " Transfers of stock by stockholders

indebted to corporation. If a stockholder shall be indebted to the corporation, the directors may refuse to consent to a transfer of his stock until such indebtedness is paid, provided a copy of this section is written or printed upon the certificate of stock."

Section 66 of the Stock Corporation Law was derived from section 51 of the Stock Corporation Law of 1909, and that section was derived from the Stock Corporation Law of 1890, chapter 564, section 26, as re-enacted by Laws of 1892, chap. 688, section 26.

The *officers* of the corporation refused transfer on August 3, 1926.

The secretary of the trust company, in affidavit form, swears that on June 2, 1925, the matter of the Starbuck notes was brought to the attention of the executive committee of the board of directors, special reference being made to the thirty-six shares of stock then registered on the books of the company in his name; that the president at this meeting suggested that the security pledged to the bank was clearly inadequate to cover the amount of the indebtedness and that the thirty-six shares be refused transfer in accordance with the provision printed upon the certificates of stock. This suggestion was adopted by the executive committee, which committee directed that said shares be refused transfer, provided, however, that if at a later time it should appear expedient to the president, a vice-president and the secretary that said shares, or any of them, be transferred, such shares should be transferred upon their order. This action of the executive committee was not entered upon the minute book of the company. On June 16, 1925, at a meeting of the board of directors, the president reported the acts of the executive committee, and the board of directors duly adopted a resolution ratifying the acts of the executive committee with regard to its action relating to the non-transfer of the Starbuck stock. Parol evidence is admissible where it is shown that the resolution or action does not appear upon the minute books of the corporation. (*Calahan* v. *Mayor*, 34 App. Div. 344; *Ehrlich* v. *Chevra, etc.*, 86 N. Y. Supp. 820.) On April 12, 1926, ten shares of the capital stock of the trust company, standing in the name of the decedent, were presented for transfer by the Bank of Manhattan Company. The statement is made that these ten shares were held by the Bank of Manhattan Company as collateral to a loan, and that the right of the Empire Trust Company to refuse transfer should be waived.

The executrix has made application to the court for an order authorizing her to sell said twenty-six shares and directing the Empire Trust Company to transfer said shares on its corporate books, because the trust company refuses to consent to the transfer.

In the instant case we observe the rigor and the tenderness

applied to the application of section 66 of the Stock Corporation Law. Why a banking corporation should be treated differently from an executrix, remains to be answered.

The trust company contends that the right given by section 66 of the Stock Corporation Law is a " valuable right," since until transfer may be required, the corporation may apply dividends to the indebtedness of the stockholder. A similar question was presented in the case of *Strahmann* v. *Yorkville Bank* (148 App. Div. 8; affd., without opinion, 210 N. Y. 536). In the instant case the loans made to the decedent did not constitute a loan or discount on the security of the shares of the capital stock owned by him. The *Strahmann* case decides that section 51 of the Stock Corporation Law of 1909 (now section 66 of the Stock Corporation Law of 1923) does not give a lien on the shares of capital stock owned by the stockholder, which is indebted to the bank, and decides merely that the directors *may refuse to consent* to a transfer of the stock until the indebtedness is paid. The judge writing the opinion said: " It is a provision for the coercion of the payment of an indebtedness by a stockholder to the corporation as a condition of his being able to effect a sale of the stock which will be recognized by the corporation." He also said: " We are of opinion that the purpose of the statute was to give notice to the purchaser of stock that the directors might refuse to consent to a transfer thereof, until the indebtedness owing by the stockholder to the corporation was paid."

The Appellate Division decided that " the defendant should have judgment to the effect that it is not *obliged to transfer the stock upon its books until the indebtedness of Clausen to it is paid.*"

In *Reynolds* v. *Bank of Mount Vernon* (6 App. Div. 62) Judge CULLEN referred to this section of the Stock Corporation Law as " authority is vested in the directors to impose substantially the same restriction on the negotiability of the stock as that of which the plaintiff complains."

At common law a corporation had no lien upon its stock, and this rule is applied in this State, in the absence of statutory authority, to banks and business corporations. (*Bank of Attica* v. *Manufacturers & Traders Bank*, 20 N. Y. 501; *Driscoll* v. *West Bradley & C. M. Co.*, 59 id. 96; *Union Bank* v. *U. S. Exchange Bank*, 143 App. Div. 128.)

It is evident that section 66 does not give a lien to the bank upon the stock, or a right to the retention of the dividends. (Cook Corp. [8th ed.] 1822.) Section 66 creates no lien, legal or equitable, no property right, no security, only legislative bludgeon, in these twenty-six shares of stock or the dividends thereof. That section

66 may be called a "valuable right" by an institution which has failed to protect itself by taking adequate collateral security for loans might be expected.

The printing of the words of the statute upon the back of the stock certificate does not create a contract. What is it? Legislative coercion. All that the *Strahmann* case decides is that the Empire Trust Company is *not obliged to transfer the stock* in question upon its books until the indebtedness of the decedent to it is paid.

The Empire Trust Company argues that it is entitled to have the market value of the stock, namely, $10,036, and the dividends, first applied on account of its indebtedness, and then be permitted to share *pro rata* with the other creditors in the balance. To this proposition the court cannot assent.

I am constrained to follow the *Strahmann* case to the effect that the trust company is *not obliged to transfer the stock* until the indebtedness of the decedent is paid. Section 66 of the Stock Corporation Law appears to be a soft club in the hands of the bank, without any affirmative rights flowing from it. It contains the negative right to withhold consent. The Banking Law (§ 108, subd. 6) prohibits loans on the security of the shares of a bank's own capital stock, and section 176 of the Personal Property Law (as added by Laws of 1913, chap. 600) denies a lien unless it is stated upon the certificate. Consequently, the reason for section 66 is apparent. It is a subterfuge in law to overcome in part what the law in plain language prohibits.

A study of the case on appeal in the *Strahmann* case discloses that the question of the validity of the section in question was not raised, whether the Legislature had the power to enact such legislative coercion, whether the section does not violate constitutional rights of property, whether it is not a conversion of the stock, of property, by the corporation which could be pursued by the ordinary remedy in an action at law against the corporation for damages. Did the trust company have a *legal* right to refuse transfer?

Any restrictions on a stockholder's right to dispose of his shares must be strictly construed. In the absence of a valid lien, is not section 66 a law in restraint of trade and against common right and void? (*Miller* v. *Farmers Milling & Elevator Co.*, 78 Neb. 441.)

The title to the whole personal estate of the deceased vested in the executrix by reason of the operation of the will. She takes unqualified the legal title to all personalty not specifically bequeathed. A case could arise where the estate is not insolvent and where the executor had a defense to the claimed indebtedness. In such an

event, can the right of " coercion," spoken of in the *Strahmann* case, as flowing from section 66, be used against an executor? It is unnecessary to answer this query.in the instant case.

The *pro rata* distribution of all assets will be about twenty-two per cent. Pursuant to the equitable powers of this court, incident to accounting proceedings, I direct the executors to withhold the payment of any intermediate dividend to the Empire Trust Company. Upon the final accounting, I further direct the executrix to deliver the twenty-six shares of stock to the Empire Trust Company in lieu of a cash dividend, to be computed at the market value of such stock at the date of delivery, and also to pay the difference in money between the value of the stock and the $914 withheld dividends, all making the trust company's *pro rata* share of the assets.

. An appeal from the decree herein will permit the question to be decided by the appellate courts as to whether a State bank has the right to withhold consent to stock transfer from an executor, claiming the protection of section 66. The court is frank to state that, without the *Strahmann* case, its decree would be different, but the same result is accomplished, however, by its direction for payment to the trust company upon the facts of the case.

Submit decision according to these views.

Decree may be had on notice to all attorneys appearing.