Hilmond O. Vogel, Plaintiff-Appellee, v. Anna Koster Melish, as Executor of the Estate of Frank Koster, Deceased, and Individually, and Berthold Joseph Hillebrand, Trustee, Defendants-Appellants.

Gen. No. 49,067.

First District, Fourth Division.

January 29, 1964.

Rehearing denied and opinion modified February 26, 1964.

George T. Spensley, of Chicago, for appellant, Melish. Walter Wellman, of Chicago, for appellant, Hillebrand.

Morgan, Halligan & Lanoff, of Chicago (Edwin A. Halligan and Samuel M. Lanoff, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This is an appeal from a declaratory judgment finding that a stock share agreement terminated on the death of one of the two parties.

Plaintiff in his action sought a determination of the status of an agreement between himself and Frank Koster concerning their rights and privileges of selling, transferring, conveying or otherwise disposing of their shares of stock in the Vogel Tool and Dye Corporation. Each owned 455 of a total of 1150 outstanding shares. The agreement made in 1954 provided in part (1) that each party thereto should have personal custody of each other's stock and each would assume all liability for the safekeeping of the certificates; (2) that if either party desired to sell, transfer, assign or convey or otherwise dispose of any shares, an offer must be transmitted to the other party who then had the right to accept such offer in full or in part in the manner set forth within said contract.

Koster died and in his will bequeathed his stock to a trustee for the benefit of his widow for life and then to his sons. In 1960 the widow, as executor, sought to have transferred to herself individually some of the shares in payment of her widow's award.

The prayer of the Complaint was that the contract be declared terminated at the death of Koster and in the alternative, that, if the court determined the contract to be in force, plaintiff be given the option to

466

purchase some or all of the decedent's shares, and further that the executor be directed to turn over to plaintiff the shares standing in his name and that plaintiff be directed to deliver to the executor the shares standing in Koster's name.

The trial court found that the death of Koster and the transfer of his shares to the executor did not give plaintiff the option to purchase Koster's shares; that the agreement terminated upon the death of Koster; that all shares of stock were free of restraint; and that plaintiff's shares should be delivered to him and Koster's shares to the executor.

In 65 Harvard Law Review the following guides on stock purchase agreements between stockholders are set out:

> First option provisions must be made specific. What occurrences create the options, who is to have them, how long they are to remain open, and what procedure one must follow in exercising them, must be stated with precision. What kinds of dispositions are subject to the restrictions also must be clearly indicated. (p 791.)

> Draftsmen frequently find that first options should be combined with definite commitments to purchase on the occurrence of specified events, e.g., the death or incapacity of the holder or his leaving the employ of the company. First option provisions alone do nothing, for instance, to solve the problems of a deceased shareholder's family and estate. (p 796.)

The contract before us contained no specific declaration of rights with respect to the shares in the event of the death of one of the parties.

Defendants contend that under paragraph 6 of the contract the agreement did not terminate at the death of Koster but inures to the benefit of the executor and

467

the heirs and that transfers of the shares to the executor, from her to the trustee and from the trustee to the sons, should not constitute a disposition entitling plaintiff to purchase the shares.

Paragraph 6 of the contract states: "The parties hereto further agree that the provisions of this agreement shall be binding upon and inuring to the benefit of the parties hereto and their respective administrators, executors, heirs and personal representatives."

In determining the meaning of this provision, we must consider not only its language but its relation to the entire agreement.

The purpose of the contract is declared therein to be that the parties "are desirous of entering into a mutual agreement with each other respecting rights and privileges of selling, transferring, conveying or otherwise disposing of said shares of said corporation." In effectuating this purpose the agreement goes on to provide in paragraph 3:

> If any one of the parties hereto desire to sell, transfer, assign, convey or otherwise dispose of all or part of the shares owned by said party in the aforesaid corporation, an offer to sell said shares shall first be made by said party to the other party, said offer shall be in writing stating the number of shares offered for sale and transmitted by registered United States mail.

This clearly refers to a disposition during the lifetimes of the parties since otherwise a notification of a desire to bequeath the shares could not be held to be operative.

█ The contract between plaintiff, a patent attorney, and Koster, an inventor, was drawn by plaintiff. Defendant urges that it be construed most strongly against its author citing Cedar Park Ceme-

tery Assn., Inc. v. Village of Calumet Park, 398 Ill 324, 333, 75 NE2d 874.

The rule of construction contra proferentem, i.e., interpretation of ambiguities against the party who chose the language employed, is applied only when all other rules of construction fail. Bryden v. Northrup, 58 Ill App 233; 12 ILP, Contracts, § 221. It is only used, according to Corbin, "after applying all of the ordinary processes of interpretation. . . ." 3 Corbin, Contracts, § 559.

In this case another rule of construction is both applicable and controlling which, simply stated, is that restrictions on the transfer of stock are to be strictly construed. Fletcher, Cyclopedia of Corporations, § 5453. This court adopted that principle in the case of Gibbon v. 3920 Lake Shore Drive Bldg. Corp., 310 Ill App 385, 34 NE2d 109, where it stated:

> It may be said as a general proposition that restrictions on the free alienation of corporate stock are not favored in the law and *will always be strictly construed*. (Lawson v. Household Finance Corp., 17 Del Ch 1, 147 Atl 312, 315; In re Starbuck's Estate, 221 NYS 540; MacDonald v. Loetscher Mfg. Co., 226 Iowa 53, 283 NW 261.) (Emphasis added.)

Although both the Gibbon case and the section in Fletcher referred to above appear in the context of restrictions found in the charter or bylaws of a corporation, we do not think that this destroys the efficacy of their logic in our instant situation involving a contractual limitation on the right of transferability. The policy involved in both cases is the same, viz., to preserve freedom of alienation of property that by its very nature should be readily transferable.

The provisions of the agreement dealing with the sale of stock which allow the offeree to accept "in full or in part" and fix a "maximum consideration" to be paid based on "total assets" (rather than net worth which would be the usual basis), evince an intention to reach a result based on a close, personal, working relationship and not to deal with strangers.

Some significance must also be read into such clauses as "personal custody" (of stock certificates) and "assume all liability for the safekeeping of said certificates."

Applying the rule of strict construction to the entire contract before us, we are convinced that it should be construed to have terminated the restriction on alienation at the death of one of the parties.

With further reference to Paragraph 6, providing that the agreement shall inure to the benefit of the "parties hereto and their respective administrators, executors, heirs and personal representatives," we believe a reasonable interpretation of this clause to be that it would apply should one party die during the pendency of a tendered offer or a time payment sale made pursuant to the conditions set out in Paragraph 5.

■ The widow requested that some of the shares be transferred to her individually in payment of a widow's award, but since there was a specific bequest of all the shares, this request would be contrary to Section 181 of Chapter 3, Illinois Revised Statutes (1959), which provides:

> The surviving spouse is entitled to receive the amount of the award in money or, at the election of the surviving spouse, to accept payment thereof, in whole or in part, in goods and chattels of the decedent not specifically bequeathed, at their appraised value.

470

██ Appellee urged the dismissal of this appeal for want of jurisdiction. The judgment was entered on May 24, 1961. A prior appeal was dismissed with a finding that the judgment was not a final order under Section 50(2) of the Civil Practice Act because of an undisposed of counterclaim. Vogel v. Melish, 37 Ill App2d 471, 185 NE2d 724. On October 31, 1962, the trial court dismissed the counterclaim, and at that time the judgment of May 24, 1961, became final and appealable.

██ We agree with the court's finding (1) that the contract terminated at the death of Koster; (2) that the transfer of his shares to the executor did not give plaintiff the option to purchase Koster's stock; (3) that all shares are free of restraint; and (4) that plaintiff's shares should be delivered to him and Koster's shares to the executor.

The judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.