685 F.2d 224
 115 L.R.R.M. (BNA) 4018
 Arthur R. GOLLBERG, Plaintiff-Appellee,
v.
BRAMSON PUBLISHING COMPANY, Defendant-Appellant.
 No. 81-1727.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 5, 1982.
Decided Aug. 16, 1982.
 
 Ronald G. Zamarin, Isham, Lincoln & Beale, Chicago, Ill., for defendant-appellant.
 Belle Lind Gordon, Solomon, Rosenfeld, Elliott, Stiefel & Abrams, Chicago, Ill., for plaintiff-appellee.
 Before BAUER, Circuit Judge, MARKEY, Chief Judge,* and POSNER, Circuit Judge.
 MARKEY, Chief Judge.
 
 
 1
 Appeal from a final judgment for Gollberg and against Bramson Publishing Company (Bramson) in an action for breach of employment contract. We reverse.
 
 BACKGROUND
 
 2
 On January 3, 1978, Bramson, publisher of a monthly business publication, hired Gollberg as an advertising space sales representative pursuant to a written contract of employment signed in Bloomfield Hills, Michigan. Paragraph 2 of that contract states:
 
 
 3
 2. The terms of this agreement shall be from January 3, 1978, for a period of one year, and shall continue from year to year, thereafter, unless terminated pursuant to paragraph 8, infra.
 
 Paragraph 8 states:
 
 4
 8. This agreement shall be terminable immediately upon the date of mailing of written notice by either party to the other, addressed by registered mail, return receipt requested, to the last known business address of the respective parties, or upon the death of Sales Representative.
 
 
 5
 Approximately six months later, on June 16, 1978, Bramson notified Gollberg verbally, and then on June 19, 1978 in writing, that his employment with the company was terminated.
 
 
 6
 On June 23, 1978, Gollberg wrote Bramson, requesting that no withholding tax be taken from his final check and stating:
 
 
 7
 As we discussed today by phone, I would like to amend our contract dated January 3, 1978, to permit my termination to be effective immediately, provided separation compensation in the amount of $4,833.33 (less any costs for insurance) is paid to me. This favor by you is really appreciated.
 
 
 8
 On March 27, 1979, Gollberg brought a breach of contract action against Bramson in the district court for the Northern District of Illinois, asserting that Bramson had no right under the employment contract to terminate his employment in June of 1978. Gollberg maintained that the first phrase of paragraph 2 of the contract-"The terms of this agreement shall be from January 3, 1978, for a period of one year,"-was not modified by the "unless terminated" language of the last phrase of paragraph 2 and was a guarantee of employment with Bramson for one year.
 
 
 9
 Bramson moved for summary judgment on the grounds that no material issue of fact was in dispute and that Brekken v. Reader's Digest Special Products, Inc., 353 F.2d 505 (7th Cir. 1965), was controlling. In Brekken, this court construed an employment contract containing nearly identical clauses as "terminable at will" and affirmed summary judgment on similar facts. Id. at 506.
 
 
 10
 The pertinent paragraphs from the contract in Brekken are:
 
 
 11
 This agreement shall be effective from the date of execution and shall remain in effect for a period of twelve months and will be automatically renewed for twelve-month terms unless sooner terminated.
 
 
 12
 This agreement may be terminated by either party upon written notice or by Manager's death.
 
 
 13
 Id.
 
 
 14
 A district court judge denied Bramson's motion, finding:
 
 
 15
 the provision in question subject to two reasonable interpretations, and ... ambiguous. Extrinsic evidence may properly be considered to determine the meaning the parties intended at the time of the contract. Burland, Reiss, Murphy & Mosher, Inc. v. Schmidt, 78 Mich.App. 670, 261 N.W.2d 540 (1977). Since disputed issues of fact exist as to this intended meaning, defendant's motion shall be, and the same hereby is, denied. Lucie v. Kleen-Leen, Inc., 499 F.2d 220 (1977).
 
 
 16
 The judge who denied Bramson's motion recused himself, the case was reassigned, and a trial ensued. At the close of Gollberg's evidence, Bramson moved for a verdict pursuant to Fed.R.Civ.P. 41(b),[1] arguing that "the evidence has established in any light that the contract by its very terms was terminable at will" and "that there was no expression of any contrary intent by the testimony of Mr. Gollberg as to the termination provision." The district court denied the motion, finding that there was "relevant evidence sufficient to present a prima facie case on the issue of liability and damages."
 
 
 17
 At the end of trial, the judge entered findings of fact and conclusions of law. Making no findings related to evidence of intent concerning terminability, the judge concluded as a matter of law "(t)hat the employment in this cause was for an initial one-year period and was thereafter terminable at will," and that Gollberg was terminated in violation of the contract. Judgment was entered for Gollberg in the amount of $19,950.43 plus interest from December 15, 1978 and costs of suit.
 
 ISSUE
 
 18
 Did the district court err, as a matter of law, in concluding after trial that Gollberg's employment was for an initial one-year period and was only thereafter terminable at will?
 
 OPINION
 
 19
 The first district court judge allowed the case to go to trial,[2] for reception of extrinsic evidence "to determine the meaning the parties intended at the time of the contract." We have carefully reviewed the trial transcript and have determined, first, that the relevant testimony contains no inconsistency regarding the intent of the parties on terminability of the contract. There were only two witnesses at trial, Gollberg and Thomas R. Bramson (T. R. Bramson), Bramson's president. Both testified that Gollberg expressed no intent respecting terminability, at least at any time before being notified of his termination.[3] Letters in evidence from Gollberg to Bramson after that notification make no mention of any intent respecting terminability.
 
 
 20
 Absent an expressed intent, and where, as here, there were no negotiations respecting terminability, a court should look within the four corners of the contract, and to the facts and circumstances surrounding the making, performing, and terminating of the contract, including actions of the parties and the prevailing practice, if any, in the industry. Henry v. J. B. Publishing Co., 54 Mich.App. 409, 221 N.W.2d 174 (1974); Michigan Crown Fender Co. v. Welch, 211 Mich. 148, 178 N.W. 684 (1920).
 
 
 21
 Taking the last first, the uncontradicted testimony of T. R. Bramson established that there was and is an industry-wide policy under which publishers' employment of advertising space sales representatives is on a "terminable at will" basis.[4] Gollberg produced no evidence tending to refute existence of the industry policy. He merely attempts by argument to moderate the effect of Bramson's evidence, noting that Bramson's president was unable to recall having seen an employment contract with language identical to that of paragraph 2.[5] Existence of an industry policy does not, however, require that its expression be in identical language in all contracts. Moreover, the substantially identical contract language in Brekken, where the contract was for employment of a regional sales manager in the field of publishing, reinforces Bramson's uncontradicted evidence establishing an industry policy.
 
 
 22
 Within the four corners of the instant contract, paragraphs 2 and 8 contain the sole references to terminability. Struck by their similarity to the corresponding provisions of the contract in Brekken, we can see no essential distinction between them or between the arguments built on them. The Brekken plaintiffs argued that the words "unless sooner terminated" applied only to renewal periods following expiration of the initial twelve-month term, but not to the initial term. This court in Brekken rejected that argument as "born from the contemplation of the plaintiffs' frustrated hopes, not from any tenable legal foundation." Brekken at 506. Gollberg makes, and we reject, the parallel argument concerning the phrase "unless terminated pursuant to paragraph 8, infra" in paragraph 2 of the present contract. There being no evidence to support Gollberg's interpretation, or to differentiate the present contract from that in Brekken, we view Brekken as controlling and reverse the trial court's judgment.
 
 
 23
 The trial court labeled the determination that "the employment in this cause was for an initial one-year period and was thereafter terminable at will" as a conclusion of law. So considered, in view of Brekken that conclusion is in error as a matter of law.
 
 
 24
 Respecting any factual determinations on which the trial court's conclusion may have rested, we are, on the entire evidence, "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).[6] If the court had entered findings of fact underlying its holding on terminability, it would have been necessary to conclude on this record that those findings were clearly erroneous under Fed.R.Civ.P. 52(a). To the extent that such findings can be assumed to have been made sub silentio, they are, regardless of their content, wholly unsupported by evidence. United States v. Johnson, 327 U.S. 106, 111-12, 66 S.Ct. 464, 466, 90 L.Ed. 562 (1946); Stinnett v. Damson Oil Corp., 648 F.2d 576 (9th Cir. 1981).
 
 
 25
 Gollberg argues that an initial one-year "no cut" provision could be reasonably inferred, for that would provide Gollberg with an adequate opportunity to prove his selling abilities. If there were such an understanding on Gollberg's part, it was unexpressed. Hence it can at most be characterized as a secret intent of one party. It is well-established that intent is relevant to proper interpretation of a contract only if it is expressed by one party to the other, not if it be kept secret. Salvatore v. City of Harper Woods, 372 Mich. 14, 124 N.W.2d 780 (1963); 4 Williston on Contracts § 606, 373-75 (3d ed. 1961). If contracts were subject to lawsuits because a party could at some future date, when dissatisfied with its terms, successfully claim that it meant something unexpressed and known only to him, the risk of contracting would be infinitely greater and its purpose entirely defeated.
 
 
 26
 The principle of mutual reciprocity further militates against Gollberg's assertion that the contract was ironclad for one full year. If under the contract a sales representative desired to resign within the first year, Bramson could hardly assert entitlement to specific performance-a form of involuntary servitude-for the entire first year. Nor could the heirs of a sales representative who died within the first year of the present contract be viewed as entitled to inherit the representative's remaining and unearned salary for that year. This court has aptly described an employment relationship which is "terminable at will" as "intrinsically a very fragile thing, which either party may end with or without cause." Loucks v. Star City Glass Co., 551 F.2d 745, 747 (7th Cir. 1977). Gollberg's letter of June 23, 1978, quoted from above, is evidence that he acquiesced in termination at least as early as that date. Whether considered as a proposed amendment to the contract, or as an attempt to bargain for immediate termination, the latter being designated a favor within Bramson's authority, the letter can hardly be considered evidence that either party intended to be bound to the other for one full year.
 
 
 27
 Gollberg first attempts to distinguish Brekken by arguing that the initial phrase of paragraph 2 at issue-"The terms of this agreement shall be from January 3, 1978, for a period of one year,"-was specifically made separate unto itself by use of a comma after "year." The contention asserts a distinction without a difference. As the Court said in Lessee of Ewing v. Burnet, 36 U.S. (11 Pet.) 41, 53, 9 L.Ed. 624 (1837): "Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail, but the court will first take the instrument by its four corners, in order to ascertain its true meaning; if that is apparent on judicially inspecting the whole, the punctuation will not be suffered to change it." Accord Marathon Oil Co. v. Kleppe, 556 F.2d 982, 985 (10th Cir. 1977); Hol-Gar Manufacturing Corp. v. United States, 351 F.2d 972, 976 (Ct.Cl.1965); and Holmes v. Phenix Insurance Co., 98 F. 240, 241-42 (8th Cir. 1899). The presence of a comma is of even less probative value here, where the true meaning of the contract is not only clear from inspection of its whole but from all of the surrounding circumstances established by uncontroverted evidence.
 
 
 28
 That the presence of punctuation cannot be used first to create and then to resolve an ambiguity is a view particularly apt here, where the contract requires that paragraph 2 be read in conjunction with paragraph 8.[7] When so read, the contract's true meaning becomes clear. Paragraph 8 states unconditionally that "(t)his agreement shall be terminable immediately upon the date of mailing of written notice by either party to the other ... or upon the death of Sales Representatives."
 
 
 29
 Gollberg next tries to distinguish Brekken by arguing that provisions of the present contract concerning differences in bonuses and salary between the first and subsequent years, and anticipated one-time negotiations for a Planbook quota scheduled for no later than September 15, 1978, differentiate the first contract year from subsequent years. Such provisions are, however, wholly unrelated to a determination of intent respecting terminability. Contracts are written with expectations that, if all goes well, they will endure and be renewed according to their terms. The terminability provisions of the present contract can be presumed to have been intended for activation only upon the occurrence of initially unexpected, negative conditions. No evidence suggests that terms providing the carrot of extra bonus incentives within the first year were meant to deprive Bramson of the stick of termination should Gollberg fail to measure up.
 
 
 30
 Gollberg next argues that Brekken is distinguishable because it was decided under Illinois law, whereas this case must be decided under Michigan law. We have been cited, however, to no cases under Michigan law that would compel us to reach a result in this case different from that reached in Brekken. Gollberg's reliance on the rule of contract construction that ambiguous language is construed most strictly against the party who drafted the contract, part of the law of contracts in both Illinois and Michigan, see, e.g., Berk v. Gordon Johnson Co., 232 F.Supp. 682, 687 (E.D.Mich.1964) (applying Michigan law); Vogel v. Melish, 46 Ill.App.2d 465, 467, 196 N.E.2d 402, 404, aff'd, 31 Ill.2d 620, 203 N.E.2d 411 (1964), is irrelevant here, where there is no evidence on which to rest a construction "against" Bramson. Similarly, the rule that when two contract paragraphs are in conflict, the first prevails, see, e.g., Berk, 232 F.Supp. at 687; Northwest Racing Association v. Hunt, 20 Ill.App.2d 393, 397, 156 N.E.2d 285, 288 (1959), is inapplicable here, where paragraphs 2 and 8 of the present contract are fully reconcilable.
 
 
 31
 Gollberg contends that in Brekken the court effectively eliminated from the contract there involved the words "and shall remain in effect for a period of twelve months" as mere surplusage, an act that would be in contravention of Michigan law. McIntosh v. Groomes, 227 Mich. 215, 198 N.W. 954 (1924). By analogy, Gollberg suggests that by following the guidance in Brekken, this court would be effectively eliminating from the present contract the phrase-" The terms of this agreement shall be from January 3, 1978, for a period of one year,"-an act that would be equally in contravention of Michigan law.
 
 In McIntosh, the court stated:
 
 32
 To arrive at a proper interpretation of particular language, the entire contract must be considered.
 
 
 33
 'Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.'
 
 
 34
 Id. 198 N.W. at 955. Analyzing, as the court in McIntosh suggests, the phrase of interest in light of the entire contract, we conclude that its initial words "The terms" refer to salary and bonus provisions which change on renewal dates, if the contract be renewed. The phrase thus has a "reasonable purpose" and is not mere surplusage.
 
 
 35
 The words of this court in Brekken concerning expectations bear repeating with respect to the present case:
 
 
 36
 "It cannot be doubted as plaintiffs assert that they expected their employment to continue for at least one year, but that was merely an expectation and not a right guaranteed by the contracts which they signed. The courts cannot rewrite the contracts which they made."
 
 
 37
 Brekken at 506.
 
 
 38
 We hold that the instant contract is terminable at will. Accordingly, we reverse the judgment appealed from and remand with instructions to enter judgment for, and award costs to, Bramson.
 
 
 39
 Reversed.
 
 
 
 *
 Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, is sitting by designation
 
 
 [1]
 Fed.R.Civ.P. 41(b) provides in pertinent part:
 After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of fact may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.
 
 
 [2]
 Bramson argues that the first district judge erred in failing to grant its motion for summary judgment. In view of our disposition of this case, we need not reach that issue
 
 
 [3]
 These are the relevant excerpts from the trial transcript:
 (a) Cross-examination of Gollberg--
 Q. Other than that (the bonus provision), did
 Trans. you have any discussion, or did you tell Mr.
 142-43 Bramson anything about your intent with regard
 to the duration of the contract or termination of
 the contract prior to June 16, 1978?
 A. No.
 (b) Direct examination of Bramson's president--
 Q. And what, if anything, was said by you at
 Trans. this meeting with respect to the terminability of
 
 
 [167]
 the contract?
 A. Simply an elicitation of the provisions of
 the contract, again, which would enumerate that
 obviously contracts are terminable in the
 industry and by us as a national practice in the
 period of, well, immediately.
 * * * *
 Q. At the January 3 or 4, meeting, was
 anything said by Mr. Gollberg to you with
 Trans. respect to what he felt the terminability
 
 
 [168]
 provision of the contract meant?
 A. No. I think it is self-explanatory.
 Q. When was the first time that Mr. Gollberg
 said anything to you about his interpretation of
 the terminability provisions of the contract?
 A. It was never once mentioned to me until it
 was brought up in a lawsuit, this lawsuit.
 
 
 [4]
 Testimony on direct examination of Bramson's president, an unchallenged expert on the technical publishing industry, included:
 Q. And what, if anything, was said by you at
 this meeting with respect to the terminability of
 the contract?
 Trans. A. Simply an elicitation of the provisions of
 
 
 [167]
 the contract, again, which would enumerate that
 obviously contracts are terminable in the
 industry and by us as a national practice in the
 period of well, immediately.
 * * * *
 Q. Mr. Bramson what is the practice of your
 company with respect to terminability of
 contracts for sales representatives?
 * * * *
 Trans.
 
 
 [195]
 THE WITNESS: We have used that same
 paragraph, the exact same paragraph, as
 Paragraph 8 in this contract for more than
 twenty-five years.... I made a list of quite a
 number of people who have been salesmen for
 us, some of whom have quit and some of whom
 I have had to terminate for ineffectiveness. In
 not one case has anyone ever questioned this
 paragraph. Everyone knew what it is and it is
 the industry practice to terminate.
 THE COURT: To terminate within a year?
 THE WITNESS: To terminate immediately.
 * * * *
 Trans.
 
 
 [196]
 Q. To your knowledge, how, if at all, does the
 practice in the industry apart from your
 company differ from that practice, from
 Bramson's practice?
 A. It's that way. I mean, you terminate
 people. It's like, I guess, shaking hands
 "Good-bye" with them. It's "now".
 
 
 [5]
 The testimony on cross-examination was:
 Q. How many employment agreements have
 you seen between sales representatives and
 other companies in the publishing industry?
 Trans. A. Probably three, five, something like that.
 
 
 [260]
 
 Q. Over your entire career in the publishing
 field, how many would you have seen?
 A. Well, just last week, I saw the standard
 agreement that has been prescribed by
 American Business Press which is the organization for
 business which, I might add, indicates that
 contracts are cancellable immediately.
 Q. All right.
 A. And I have seen them from McGraw-Hill.
 I believe I have seen them from Technical
 Publishing. I believe I have seen them from
 Hitchcock Publishing Company which is now a
 Division of ABC. Those are some that I can
 recall.
 * * * *
 Trans.
 
 
 [261]
 Q. Can you state that you have ever seen an
 employment contract involving another company
 in the publishing field that has language
 identical to the language in Paragraph 2 of
 Exhibit 1?
 A. No.
 
 
 [6]
 The trial court made no findings respecting an industry-wide policy, or respecting the effect of Gollberg's letter of June 23, 1978, or respecting any other fact on which one might rest a conclusion that the parties did or did not intend that the contract be terminable within its first year
 
 
 [7]
 Paragraph 2 specifically incorporates paragraph 8 by the phrase "unless terminated pursuant to paragraph 8, infra." The first district court judge who ruled on the motion for summary judgment found only one provision-"the provision in question"-"subject to two reasonable interpretations" and "ambiguous."